IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:06-CV-151-FL

JOHN BRYANT, JR.,

    Plaintiff/Claimant,

**MEMORANDUM AND
RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant John Bryant, Jr., seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits (DIB). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-17] be denied and Defendant's Motion for Judgment on the Pleadings [DE-21] be granted.

## STATEMENT OF THE CASE

On July 6, 2004, Claimant protectively filed an application for DIB, alleging disability beginning on June 30, 2002[1] due to a lower back injury. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on November 30, 2005. After the hearing, on January 11, 2006, the ALJ issued a decision denying plaintiff's claims. The Appeals Council denied Claimant's request for review on September 25, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart,

---

[1] At the administrative hearing, Claimant amended his alleged onset date to July 1, 2003. (R. 272).

296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

I.    **The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the ALJ committed the following errors: (1) failure to perform a proper credibility assessment; (2) failure to consider Claimant's mental impairment in determining RFC; (3) improper hypothetical presented to the VE; (4) failure to properly analyze and credit Claimant's VA rating; and (5) improper consideration of past relevant work.

3

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 16). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited him from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, sciatica, mild degenerative joint disease of the acromioclavicular joint, and sleep apnea. (R. 17). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 17). Next, the ALJ determined Claimant's RFC by considering all of his subjective complaints and reviewing his medical records, and concluded that he had the ability to perform light work activity. (R. 20). At step four, the ALJ found that Claimant had past relevant work experience as a motion picture projectionist and based on his RFC, he could return to his past relevant work. (R. 22-23). Accordingly, Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to the date of the ALJ's decision. (R. 23).

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing

Claimant testified at his administrative hearing. (R. 270-86). He stated that he lives in Jacksonville, North Carolina with his wife. (R. 270-71). He currently receives income

4

from the Veteran's Administration in the amount of $2600 per month. (R. 271). Claimant has a 100% service-connected disability. (Id.). Claimant's wife is employed and makes about $2800 per month. (Id.). Claimant stopped working in July 2003. (R. 272).

Claimant testified that he was in the Marine Corps for twenty years. (Id.). While in the service, he worked as a water supply engineer. (R. 273). That job encompassed purifying water and performing water reconnaissance to set up field water sites for troops in various theaters of operation, including war-time service. (Id.). When Claimant left the military, he received a service-connected disability rating for his back, although he also has problems with his knees, ankles, feet, high blood pressure, and rashes that he believes are from Gulf War Syndrome. (R. 273-74). Claimant has never been diagnosed with Gulf War Syndrome, but indicated that he is currently being evaluated for it. (R. 274).

After retiring from the Marine Corps, Claimant worked at a theater as a projectionist and at an automobile hobby shop. (Id.). He stopped work in July 2003 because he was unable to perform his duties at those jobs. (Id.). Claimant's duties as a projectionist required him to carry rolls up film up several flights of stairs to the projection room and load the film onto the machine. (R. 275). Claimant's back pain interfered with these duties. (Id.). As an automotive mechanic, Claimant was required to bend to get under vehicles and move heavy machinery and tools around. (Id.).

Claimant's back pain began when he fell about forty feet off of a repel tower and landed on his back. (Id.). Claimant now has trouble sitting and at the hearing had to stand after about five minutes. (R. 275-76). If he sits for more than five minutes, Claimant gets a sharp pain in his lower back that radiates through his spine. (R. 276). Claimant has been using a cane for over a year. (Id.). When he has to stand, Claimant is shaky and has

5

difficulty, even when leaning on his cane. (Id.). Claimant testified that he has severe back pain every day. (R. 277). To help with the pain, he takes hot baths, has continuous physical therapy, and lays down. (Id.). On a typical day, Claimant spends 20 to 22 hours laying down or with his feet propped up. (Id.). Claimant's neurosurgeon stated that he was leaving surgery as a last resort, but that the surgery would only help mechanically, and not with the pain. (Id.). Claimant takes medication daily and it helps to lessen the pain. (R. 278). However, the medication also makes him sleepy. (Id.).

Claimant's back also makes his hips and knees hurt, which is the reason he uses a cane. (Id.). Claimant's knees and ankles swell nearly everyday. (R. 279). Claimant is able to stand for about 10 minutes before he must sit down, and he can sit for about 10-15 minutes. (Id.). He does most of this sitting and standing while he is at physical therapy. (Id.). Claimant is unable to do chores around the house. (Id.). He also does not go places or do things with his wife because of his pain. (R. 280). When Claimant left the Marine Corps, his pain was not this bad, but it has worsened over time. (Id.).

At his physical therapy sessions Claimant does the exercises that are prescribed for him. (R. 281). Some days, the therapist has Claimant lay down with hot packs on his neck and lower back. (Id.). When someone touches his back, Claimant gets a tingling sensation, and Claimant often has muscle spasms. (R. 282).

Claimant goes to the Naval Hospital for treatment and was last seen there in October. (R. 282-83). He is being treated there for sleep apnea and back pain. (R. 283). Claimant had a sleep study performed on October 20 at Craven Regional Medical Center in New Bern. (Id.). After the study, Claimant received a CPAP machine, which he uses to help him sleep. (R. 284). So far, he has not seen any improvement with his sleep. (Id.).

Claimant again stated that he does not do chores around the house, he does not help with the grocery shopping, and he does not attend social activities. (R. 285). He tries to attend church about twice a month, but is unable to sit through the entire service. (Id.). He sits in the rear, so he can stand up when he needs and not disturb others. (Id.). Claimant has a college education, which he got while he was in the service. (Id.). Claimant is unable to use a computer, though, because when he sits for too long, his back hurts him. (R. 286).

B.  **The Vocational Expert's Testimony at the Administrative Hearing**

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 286-90). The VE stated that she had reviewed Claimant's documentary evidence prior to the hearing and was present throughout Claimant's testimony. (R. 286). The VE had not discussed the merits of Claimant's case with anyone. (R. 287). The VE described Claimant's past relevant work as follows: water treatment operator, medium work with a Specific Vocational Preparation (SVP) of 5 and a Dictionary of Occupational Titles (DOT) code of 954.382-014; heavy equipment operator, medium work with an SVP of 6 and a DOT code of 859.683-010; industrial truck operator, medium work with an SVP of 3 and a DOT code of 921.683-050; motion picture projectionist, light work with an SVP of 6 and a DOT code of 960.362-010; drill instructor, medium work with an SVP of 4 and a DOT code of 378.227-014; and automobile mechanic helper, heavy work with an SVP of 3 and a DOT code of 620.684-014. (R. 288). The ALJ then posed the following hypothetical:

> [A]ssume a hypothetical claimant the same age, education, and occupational background as the claimant before us today. The hypothetical claimant would have a residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently. Stand or walk, with normal breaks, for a total of about six hours in an eight hour day. Sit with normal breaks for a

7

total of about six hours in an eight hour day. Would be able to frequently climb ramps and stairs, balance, kneel, crouch, crawl. Could occasionally stoop. Would hypothetical claimant number one be capable of performing any of the claimant's past work?

(R. 288-89). The VE responded affirmatively. (R. 289). According to the VE, such an individual could perform the work of a projectionist. (Id.). The ALJ then posed a second hypothetical:

> [assume] a hypothetical claimant the same age, educational, occupational background as the claimant before us today. The hypothetical claimant number two would retain the residual functional capacity consistent with that described in the claimant's testimony with salient features of which would be an ability to sit up to ten minutes at a time. An ability to stand up to ten minutes at a time. Requirement to be able to frequently alternated [sic] between those positions at . . . ten minute increments. And a need to take frequent rest breaks secondary to back pain including the need to lie prone. Would you be able to identify any jobs at any exertional level for hypothetical claimant number two?

(Id.). The VE responded that there would not be any jobs that such a person could perform. (Id.). The VE stated that there were no conflicts between her testimony and the DOT or the companion publication, Selected Characteristics of Occupations. (Id.).

## IV. Claimant's Arguments

### A. Credibility Assessment

Claimant argues that substantial evidence does not support the ALJ's finding that his allegations of pain and functional restrictions are not fully credible. The court disagrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir.

8

1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that although "claimant has a medically determinable impairment that could reasonably be expected to produce the pain and other symptoms alleged, the evidence does not support the claimant's allegations of the intensity and persistence of such pain and other symptoms." (R. 21). The ALJ provided specific reasons for his adverse credibility findings. The ALJ noted that although Claimant testified that he had used a cane for over a year, that was not documented as a necessity in his medical records. (Id.). Additionally, although Claimant testified that he spent 20-22 hours per day lying or sitting down, in January 2005 he told his doctor that he was walking regularly for exercise. (Id.). Further, although Claimant initially alleged disability beginning just after retiring from the military, Claimant was not medically retired, nor did he cease working. (Id.). Instead, as the ALJ stated, Claimant continued to work while holding himself out to the Social Security Administration as unemployable. (Id.).

As shown, the ALJ thoroughly explained his credibility analysis. The fact that Claimant can point to other evidence in the record that supports the alleged severity of his

pain does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays, 907 F.2d at 1456. It is not the responsibility of this court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding Claimant not fully credible.

B.  **Consideration of Claimant's Mental Impairments**

Claimant argues that the ALJ failed to appropriately assess his mental impairments. Specifically, Claimant alleges that the ALJ should have used the special technique for mental impairments, found in 20 C.F.R. § 404.1520a, to evaluate the effects of his Gulf War Syndrome. The court disagrees.

Prior to evaluating an alleged mental impairment, the ALJ "must first evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [a claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b). Here, a consultative examiner, Wesley Murfin, M.D., evaluated claimant on 10 November 2004. (R. 135-38). Claimant described having an "unknown illness" that he thought was a result of his participation in the first Gulf War. (R. 135). This illness consisted of "having a rash that occurs every three to four months, photophobia, dry skin, his hair falling out and difficulty sleeping." (Id.). Based on this information, Dr. Murfin thought that Claimant might have Gulf War Syndrome, noting that "[t]he etiology of this is unclear and is frequently suspected to be on a psychological basis, although still unknown." (R. 138). The ALJ discussed this finding, but then noted that Dr. Murfin did not point to any medical signs or laboratory findings to support a diagnosis of Gulf War Syndrome, and further

there were no medical signs or laboratory findings in Claimant's medical record to indicate a diagnosis of Gulf War Syndrome. (R. 17). The ALJ therefore found that Claimant's allegation Gulf War Syndrome was not medically determinable. (Id.).

Courts have held that where a claimant presents a colorable claim of mental impairment, the ALJ must have a Psychiatric Review Technique form[2] completed and included in the record or incorporate its analysis into his findings and conclusions. Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005); Stambaugh v. Sullivan, 929 F.2d 292, 296 (7th Cir. 1991). The evidence in the record regarding Gulf War Syndrome includes, as noted, Dr. Murfin's statement that it was his impression that Claimant had Gulf War Syndrome. (R. 138). Also, in one of plaintiff's medical records, on August 9, 2005, there is a reference to Gulf War Syndrome and Post Traumatic Stress Disorder when Claimant apparently stated to his treating physician that his wife believed he had these disorders. (R. 206). However, there does not appear to be any medical follow up on that concern. Finally, at his VA disability consultation on January 10, 2002, Claimant complained of insomnia beginning after his return from Saudi Arabia (R. 244); however, the evaluating physician, Dr. Jill Macapobre, M.D., found "no pathology to render a diagnosis at this time" (R. 259). Dr. Macapobre noted that Claimant reported seeing a psychiatrist in the past, but was instructed to rest and relax, and was not prescribed any medication. (Id.).

Claimant has not presented enough evidence to support a colorable claim that he has Gulf War Syndrome. As the ALJ noted, it appears that Dr. Murfin relied solely on Claimant's own statements about his alleged illness and not on any medical testing or

---

[2] The Psychiatric Review Technique form follows the special technique for evaluating mental impairments, found in 20 C.F.R. § 404.1520a.

11

signs. (See R. 17). Further, Claimant apparently saw a psychiatrist who determined that Claimant needed rest and relaxation–not further mental health treatment or medication. (R. 259). Finally, on his application for disability benefits, Claimant did not allege any mental impairments–only lower back pain. (R. 60). Although Claimant testified that he believed his skin rashes were from Gulf War Syndrome, he did not testify as to any mental impairments at his hearing. (R. 273-74). Accordingly, Claimant has not presented a colorable claim of mental impairment, and the ALJ did not err in failing to perform the special technique for mental impairments.

### C. Hypothetical Posed to VE

Claimant also argues that the ALJ failed to adequately account for his mental impairments in the hypothetical posed to the VE. The court disagrees. As noted above, Claimant has not presented a colorable claim of mental impairment.

Courts have repeatedly held that questions to a VE must precisely set out the claimant's individual physical and mental impairments. Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir. 1989). However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992). If the ALJ does not believe that the plaintiff suffers from one or more claimed impairments–and if substantial evidence supports that conclusion–then the ALJ is not required to include those impairments in his questioning of the VE. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

Here, as noted above, the ALJ did not find sufficient medical evidence to support Claimant's alleged mental impairment from Gulf War Syndrome and substantial evidence

12

supports that determination. Therefore, the ALJ was not required to include it in a hypothetical posed to the VE. See Johnson, 434 F.3d at 659.

**D.    Consideration of Claimant's VA Rating**

Claimant next argues that the ALJ failed to consider and give appropriate weight to the disability determination made by the VA that claimant was unemployable. The Court disagrees.

Social Security Ruling 06-3p, which was adopted approximately two years following the ALJ's decision, provides guidance for dealing with the disability decisions of other agencies. 71 Fed. Reg 45593 (Aug. 9, 2006). The ruling states that the ALJ must consider other agencies' disability decisions, although they are not binding. Id. at 45596. Further, the ALJ should explain the consideration given to the other decisions. Id. at 45597. Case law in our circuit similarly holds that the ALJ must consider the disability decisions of other agencies. Hicks v. Gardner, 393 F.2d 299, 302 (4th Cir. 1968), Hayes v. Barnhart, 4:05CV43, 2006 U.S. Dist. LEXIS 14823, at *8 (W.D. Va. March 20, 2006).

The disability determination made by the VA was part of the record before the ALJ, and the ALJ noted its existence and consideration of it in his decision. (R. 17-18). In May 2003, the VA determined that Claimant's spinal impairments were 40 percent disabling, and his left and right leg radiculopathy were each 10 percent disabling. (R. 129-30). Claimant was therefore entitled to "individual unemployability" because he was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." (R. 132). Additionally, the VA decision stated that Claimant's ratings were not permanent and could be changed, since "there is a likelihood of improvement." (R. 131, 132).

13

The ALJ correctly stated that the VA rating was based on a different evaluation system than that used for Social Security claims; therefore, the ALJ did not accord the VA rating controlling weight. (R. 18). The ALJ noted that "for all the reasons set out in this decision" the VA rating decision did not overcome his determination that Claimant could do work related activity. (Id.). Accordingly, the ALJ appropriately considered and discussed the VA's disability determination.

E.  **Consideration of Part Time Work as Past Relevant Work**

Lastly, Claimant argues that it was improper for the ALJ to consider his work as a motion picture projectionist as past relevant work, since Claimant only worked part-time and the work was not performed at the level of substantial gainful activity after July 2003. The court cannot agree. Past relevant work is defined as work activity that occurred "within the last 15 years, lasted long enough for [a claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Work is substantial when it "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). The regulations specifically state that work activity can be substantial, "even if it is done on a part-time basis." Id. Work is gainful when it is of a type that is "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

Clearly the regulations do not limit past relevant work to only full-time employment. Here, the record indicates that Claimant worked as a projectionist from March 1996 until

April or July 2003.[3] (R. 61, 272). This was within 15 years prior to Claimant's application for benefits, and certainly Claimant worked the job long enough to learn how to do it. The job was both substantial, in that it involved significant physical tasks like carrying and loading movie films, and it was gainful, since it was the type of work usually done for profit and Claimant did in fact earn income from the work. (See R. 55 (detailing Claimant's monthly income in 2002 and 2003)). The fact that Claimant did not perform this job at the substantial gainful activity level after 2003, does not limit the ALJ from considering it as past relevant work.

In the RFC determination, the ALJ found that Claimant could perform light work activity (R. 20), and the job of a motion picture projectionist, both generally and as previously performed, fell within the category of light work activity (R. 22). Accordingly, the ALJ appropriately considered Claimant's work as a motion picture projectionist as past relevant work.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings be **DENIED**, and defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the

---

[3] On Claimant's Adult Disability Report he stated that he worked as a projectionist until April 2003 (R. 61); however, Claimant testified that he worked as a projectionist until July 2003. (R. 272).

proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 11th day of March, 2008.

DAVID W. DANIEL
United States Magistrate Judge